ANNIE GOLDSTEIN, also Known as ANNETTE GOLDSTEIN, Appellant, *v.* NEW YORK LIFE INSURANCE COMPANY, Respondent.

First Department, January 26, 1917.

Insurance — discovery by applicant for life insurance of diseased condition between time of application and issuance of policy — fraudulent concealment of disease.

Where an applicant for life insurance, having submitted to the medical examination of the insurance company, was informed by his own physicians that he was in a state of health which required a serious operation, and afterwards accepted the policy of the insurance company without making known to it the discovery as to the state of his health, it was a fraud upon the insurer, and there can be no recovery upon the policy when the insured subsequently died of the disease for which the operation was performed.

As the contract of insurance had not been consummated when the insured was informed that he must undergo a serious operation, he was bound in good faith to notify the company of that fact before he could accept from it a completed contract.

CLARKE, P. J., dissented.

APPEAL by the plaintiff, Annie Goldstein, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 25th day of May, 1915, setting aside the verdict of a jury in plaintiff's favor and granting defendant's motion for a new trial made upon the minutes.

*Morris E. Gossett,* for the appellant.

*Louis H. Cooke,* for the respondent.

Order affirmed, with costs, on opinion of PAGE, J.

Present — CLARKE, P. J., McLAUGHLIN, SCOTT and DAVIS, JJ.; CLARKE, P. J., dissented.

The following is the opinion of the court below:

PAGE, J.:

The principal ground upon which this motion is made to set aside a verdict in favor of the plaintiff is that between the time when the insured made application for a policy of insurance

upon his life and submitted to a medical examination for that purpose and the time when the application was accepted by the defendant a material change in his state of health occurred which he failed to make known to the defendant, and which concealment, it is claimed, was a fraud upon the defendant and voided the policies issued by it. It appears that a week after the examination in which the insured stated in writing that he had never had or suffered from any disease of the stomach, and had never consulted a physician for any ailment not mentioned, he was compelled to consult a physician on account of trouble he was having with his stomach, and three days thereafter was taken to a specialist, who informed him that he had an obstruction in his stomach for which he would have to undergo an operation. This was on January 16, 1913. On January 17, 1913, the defendant by its agent delivered the policies to the insured and accepted his notes in payment of the premiums. About a week later the operation was performed for cancer of the stomach and the insured died. I am unable to find a reported case in this State in which the question here involved has been directly determined, and none has been called to my attention. The Federal courts, however, have several times passed upon similar facts. In *Equitable Life Assur. Socy.* v. *McElroy* (83 Fed. Rep. 631), where a policy of life insurance had lapsed and negotiations were pending between the insured and the company to have it reinstated, after a medical examination had been held, the insured became ill with appendicitis. When about to undergo an operation he sent his secretary to pay the premium and received the policy, which the secretary did while concealing the state of health of the insured by a statement that he was out of town. The court held that the failure of the insured or his secretary to disclose the condition of his health was a fraud. The court said (at page 636 of the prevailing opinion): "When the representation of good health and the certificate of the surgeon have been made, and the contract is not immediately closed, but negotiations for it continue, * * * the representation and certificate continue and condition all the proposals and the ultimate contract, when it is closed. They are all made in reliance upon the continued truth of the representation and certificate,

and in the belief that there has been no material change in the health or the probability of the continued life of the subject. The nature of this contract, the insurance of a man's life, the perfect familiarity of the man himself with the condition of its subject-matter, his own life, the ignorance of the insurance company concerning it, and its necessary reliance in making the contract upon his good faith, honesty and truthfulness, impose upon him the duty of disclosing to the company every fact material to the risk which comes to his knowledge at any time before the contract is finally closed. An intentional omission to discharge that duty perpetrates a plain fraud upon the company, which necessarily avoids the contract." Similarly in *Cable* v. *United States Life Ins. Co.* (111 Fed. Rep. 19) a man who had applied for a policy of insurance on his life, and had been examined for it, was taken with pneumonia after the medical examination was held and before the policy was delivered and the premium paid. The court there said (at page 28 of the opinion): " The statements in the application of good health and freedom from disease, and especially from pneumonia, constitute a warranty of the contract as though declared simultaneously with the delivery of the policy. If there had been a change in health betweeen the date of the application and the delivery of the policy, the company was entitled to know of it, and to be fully informed concerning it, that it might determine whether, notwithstanding such change, it would consummate the agreement and deliver its policy." In *Piedmont, etc., Life Ins. Co.* v. *Ewing* (92 U. S. 377) the Supreme Court of the United States similarly held that where a contract of life insurance was being negotiated, and while the insured was *in extremis*, a friend paid the premium and accepted a delivery of the policy without disclosing his condition, no valid contract was made. It is a familiar proposition of the general law of contracts that where representations are made for the purpose of inducing another to enter into a contract, they continue down to the time when negotiations are closed and speak as of the time when the contract is consummated and the minds of the parties meet. If the representations, though originally true, are known to their maker to be untrue at the time when he contracts, he is guilty of fraudu-

lent misrepresentations. Such has also been held to be the law of contracts relating to marine insurance in this State (*Snow* v. *Mercantile Mutual Ins. Co.*, 61 N. Y. 160), and the principle is especially applicable to life insurance contracts wherein, as stated above, the insured is familiar with the general state of his own health and any changes occurring therein and the company ignorant concerning it. It is clear, therefore, that if the contract of insurance in the instant case had not been consummated at the time when the insured was informed that he must undergo an operation for an obstruction in his stomach, he was bound in good faith to notify the company of that fact before he could accept from it a completed contract. The question of when the contract was consummated and became binding upon the parties is in this case determined by the words of the application. It states: "I agree as follows: 1. That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy delivered to and received by me during my lifetime, and that unless otherwise agreed in writing the policy shall then relate back to and take effect as of the date of this application." This language, in my mind, clearly signifies an intention that the application for insurance shall not be deemed to have been accepted until the policy of insurance has been delivered to the insured and the first premium paid, but, that having been done, unless otherwise provided for in writing, the date of the contract shall then be the date of the original application. It certainly could not be said that the company was bound by any contract up to the time when it made a delivery of the policies and received notes for the premiums, and had it learned of the physical condition of the insured before that time it could have legally refused to deliver the policies. Likewise up to that time the insured was free to cancel his application and refuse to contract. (*Globe Mutual Life Ins. Co.* v. *Snell*, 19 Hun, 560.) In the absence of any overt act upon the part of the company showing an acceptance of the application and an intention to be bound before the happening of the events so stipulated in the application itself, this stipulation is absolutely controlling. (*Equitable Life Assur. Soc.* v. *Clements*, 140 U. S. 226.) This conclusion is contrary to that arrived at by the Circuit Court of Appeals, Ninth Circuit, in

the case of *New York Life Ins. Co.* v. *Moats* (207 Fed. Rep. 481, 492 *et seq.*), in construing the identical contract under very similar circumstances as in the case at bar.   The Circuit Court held that in the absence of inquiry by the company there was no obligation on the insured of his own volition to inform the company of facts coming to his knowledge intermediate the signing of the application and the delivery of the policy, and that representations made by an applicant as to his good health are not continuing representations covering the period between the date of the application and the delivery of the policy where the policy does not provide that the insured should be in good health at the date of delivery.   In the case at bar the knowledge that came to the applicant showed that what he had deemed at the time of the application indigestion was an ailment so serious as to require him to undergo a major operation.   Had the company been informed that the real condition of the applicant was so different from that which the applicant believed and represented it to be at the time of the application, the probability is that they would not have delivered the policy.   I am of opinion that until the contract became a binding obligation, so long as the company had the right to withdraw therefrom, the representation remained a continuing one, and if the applicant acquired knowledge of facts which made his previous representation false, the obligation rested upon him to disclose those facts to the company before he accepted the policy and paid the premium.   I am of the opinion, therefore, that the undisputed facts show that the deceased was guilty of fraudulently concealing his condition at the time when he entered into the contract, and that for this reason the verdict of the jury in favor of the plaintiff must be set aside and a new trial ordered.