**BRADY v. JOHN HANCOCK MUT. INS. CO. OF BOSTON, MASS.**

District Court, W. D. New York.

Nov. 23, 1942.

---

26, 1941, through one Desmon, an agent of the insurance company. The policies were issued under date of July 17, 1941. The insured died October 15, 1941, as a result of an operation for a recurrent ulcer of the stomach. The insurance company resists the suit on the ground of fraud consisting of alleged material misrepresentations concerning his health in the original application for insurance and in an amendment to the application and upon the further ground that the policies did not become effective because the insured was treated by a physician subsequent to the date of his application and before issuance of the policies, which fact was concealed from the insurance company.

The plaintiff contends that the first premium was paid with the application. To do so she must completely ignore, or at least hold as without meaning, the unequivocal negative answer to the question contained in the application as to whether the premium was paid. It was moreover expressly recited in the application "Amount paid—none". With the application the insured gave Desmon a demand note for $150 payable to Desmon's order. The total premium for the two policies was recited in the application to be $123.40. Was this equivalent to the payment of the premium? I think not. In the first place Desmon kept the note in his own possession. Payment of the note was never demanded. The taking of the note was an artifice on the part of the insurance agent to "ward off the possibility of competition" and to "obligate the insured". The company had no knowledge of the note transaction. In order to establish a contractual relationship between the insured and the company prior to the issuance of the policies, it is incumbent on the insured to show payment of the premium with the application. Nothing less will suffice. The most favorable view that may be taken of the note from the standpoint of the plaintiff was that it was an agreement to pay the premium when payment was demanded. An agreement to pay is not equivalent to payment. Travelers Ins. Co. v. Wolfe, 6 Cir., 78 F.2d 78, 82, certiorari denied 296 U.S. 635, 56 S. Ct. 158, 80 L.Ed. 452; MacKelvie v. Mutual Ben. Life Ins. Co., 2 Cir., 287 F. 660, 663, certiorari denied 262 U.S. 747, 43 S. Ct. 522, 67 L.Ed. 1212; Bradley v. New York Life Ins. Co., 8 Cir., 275 F. 657, 659. The application expressly provided that

James B. McKenna, of Buffalo, N. Y., for plaintiff.

Dudley, Stowe & Sawyer, of Buffalo, N. Y., for defendant.

BURKE, District Judge.

This is an action by the widow of the insured, the beneficiary named in two insurance policies on the life of William P. Brady totaling $20,000. The insured made written application for the policies on June

the agent had no authority to change any condition of the application, or to extend credit for, or the time for payment of the premium.

The application provided that the temporary receipt attached to the application was the only receipt the agent was authorized to give for any payment of premium when the application was signed. The plaintiff testified that she saw the agent detach a temporary receipt from the application and give it to the insured. She further said that on that occasion the insured, Jordon, a cousin of the insured, and she were present. Jordon's testimony did not bear her out in this respect. He said that he was in an adjoining room, a waiting room that the insured used in connection with his office. He saw no receipt given the insured. He saw a man come out from the insured's office who the insured told him was an agent with whom he had just made application for insurance. At the insured's request he drove him to the medical examiner's office. As he was backing out of the driveway he said the insured had in his hand a paper which he said was a receipt for insurance. There is no testimony that Jordon read it. The plain inference is that he did not have an opportunity to read it. As against this we have the testimony of a clerk in the home office of the company. She testified that she detached the binding receipt at the home office on July 8, 1941, and placed on the application a stamp denoting that fact and that on the application she placed her initial. From this proof I conclude that the plaintiff was confused, that she did not see the temporary receipt detached from the policy, but that it was detached at the home office.

■ I am not convinced by the evidence that there was any misrepresentation as to the health of the insured in the original application.

The insured was examined by a medical examiner on the same day the application was made. The medical examiner recommended issuance of the policies "as per history of ulcers". On July 9, 1941, the insured suffered a gastric hemorrhage. He was confined to a hospital under a physician's care until July 19, 1941. On his discharge he was instructed to follow a diet and continue treatment. The company sent on the policies to its agent together with a paper to be executed by the insured before delivery of the policies. The policies were dated July 17, 1941. This paper was styled "Amendment to the application for policy with health certificate". It provided that the policies be issued at a special premium classification, an amount increased over that stated in the original application. It contained the further statement, "The proposed insured, or the insured, as the case may be, is now in sound health except as otherwise hereinafter stated; and the proposed insured, or the insured, has had no injury and no ailment, illness or disease or symptoms thereof, or consulted or been treated by a physician or other practitioner except as otherwise hereinafter stated". The policies were mailed by the agent to the insured on July 21, 1941. The letter accompanying the policies informed the insured of the correct premium and stated that if the insured would send his check for the premium and return the executed amendment form his note would be returned. The insured signed the amendment without exception. It was dated July 17, 1941, the same date which the policies bore, although obviously signed later than that. He returned it to the agent with his check for the premium and the demand note was returned to him. When the insured signed and delivered the amendment no contractual relationship existed between the insured and the company for the reason that the premium had not been paid. The application provided that if the premium was not paid with the application, the policy would take effect on the date of its issue, and only if the applicant had not consulted or been treated by a physician since the medical examination. The intervening treatment undergone by the insured was a breach of an express condition precedent to the securing of the insurance which prevented the policies from taking effect. Prudential Ins. Co. v. Drucker, 244 App.Div. 41, 44, 278 N.Y.S. 191.

■■ But there is a more compelling reason for holding that the company is not liable on the policies. The representations in the application as to the health of the insured were continuing representations "as though declared simultaneously with the delivery of the policies". Cable v. United States Life Ins. Co., 7 Cir., 111 F. 19, 28. When the policies were mailed to the insured with the amendment to the application the terms of the insurance contract were still in negotiation between the parties. Not only did the insured conceal

176

from the company the fact that he had had a recurrence of his malady but by signing the amendment containing the health certificate he actively misrepresented a material fact upon which the company relied. Failure to disclose conditions affecting the risk made the contract of insurance voidable at the insurers option. Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 316, 48 S.Ct. 512, 72 L.Ed. 895; Snow v. Mercantile Mut. Ins. Co., 61 N.Y. 160; Goldstein v. New York Life Ins. Co., 176 App.Div. 813, 162 N.Y.S. 1088, affirmed 227 N.Y. 575, 124 N.E. 898.

Complaint dismissed.