STATE FARM MUTUAL AUTOMOBILE INS. CO. *v.* CALHOUN.

No. 41053          May 25, 1959          112 So. 2d 366

*Beard, Pack & Ratcliff,* Laurel, for appellant.

*J. C. Bell, Francis T. Zachary,* Hattiesburg, for appellee.

KYLE, J.

This case is before us on appeal by the State Farm Mutual Automobile Insurance Company, defendant in the court below, from a decree of the Chancery Court of Forrest County awarding to Mrs. Darlene Calhoun, complainant in the court below, a money judgment for the sum of $2,830, being the unpaid balance of a money judgment rendered by the Circuit Court of said County in favor of Mrs. Calhoun in an action for damages against Mrs. Beatrice Carter for personal injuries alleged to have been sustained by Mrs. Calhoun as a

result of an automobile accident which occurred on February 16, 1954. The automobile which Mrs. Carter was driving at the time of the accident was a 1949 Ford sedan, which was owned by Mrs. Carter's husband, Charles L. Carter.

The suit against the insurance company was filed by Mrs. Calhoun in the Circuit Court of Forrest County on October 7, 1957, and was based upon an automobile insurance policy issued by the above named insurance company to Charles L. Carter on February 16, 1954, for the "policy period—12:01 A.M., standard time of each date, Feb. 16, 1954 to Aug. 16, 1954." The photostat copy of the policy which appears in the record shows that the dates, "Feb. 16, 1954 to Aug. 16, 1954," were inserted in the policy by the use of a typewriter. The remaining portion of the "policy period" provision, which specifies the hours, was in print. The policy was a standard form of automobile liability policy and contained the customary clause, obligating the insurer "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

The plaintiff alleged in her declaration the facts relating to the automobile collision which resulted in her injuries, and the recovery of a judgment by the plaintiff against Mrs. Carter on November 9, 1954, in the above stated sum of $3,000, only $170 of which had been paid; and the plaintiff asked for a judgment against the insurance company for the unpaid balance of $2,830 with interest and costs. After the filing of the defendant's answer the cause was transferred to the chancery court, and new pleadings were filed in that court.

The defendant in its answer admitted the issuance of the policy of insurance, but averred that it was null

and void by reason of the concealment and fraud of Charles L. Carter in the procurement of the policy. The defendant averred in its answer that the accident, which resulted in the complainant's injuries, occurred about 3:25 o'clock P.M. February 16, 1954; and that Charles L. Carter learned of the accident soon after it occurred; that the said Charles L. Carter, knowing that said accident had occurred, went to the office of one the defendant's soliciting agents and applied for a policy of liability insurance on said automobile and paid to the defendant's soliciting agent the necessary premium for said policy, wilfully concealing from the defendant's soliciting agent the fact that said accident had occurred; and that the defendant's agent immediately advised the defendant of Carter's desire for a policy of insurance and remitted to the defendant the premium for the insurance. The defendant also averred in its answer that on February 24, 1954, the said Charles L. Carter reported to the defendant's soliciting agent that the automobile had been in a collision which resulted in personal injuries; and at that time wilfully misrepresented to the defendant's agent that the collision had occurred on February 17, 1954. The defendant stated in its answer that this was the first knowledge which the defendant had that the automobile had been in a collision. The defendant also stated in its answer that the defendant advised Carter on March 20, 1954, that the insurance policy exhibited with the complainant's bill did not cover the automobile collision which had occurred on February 16, and that the said Carter acquiesced and assented thereto and stated that nothing would come of the collision anyway. The defendant also averred in its answer that, after the complainant had filed her suit against Mrs. Carter on March 19, 1954, the defendant, upon being advised of that suit, again informed the said Carter that the complainant's claim was not within the coverage of said insurance policy, and the said Carter, acting by

himself and by his attorney, acquiesced in that statement. The defendant averred in its answer that the concealment by the said Carter of the fact that the automobile had already been involved in a collision giving rise to personal injuries, at the time when he applied for and paid the premium on said policy, was a wilful and fraudulent concealment, which rendered the policy sued on null and void. The defendant made its answer a cross bill and asked that the court either cancel the policy of insurance or reform the same so as to exclude from its coverage the collision mentioned in the complainant's bill.

The complainant filed a reply to the affirmative matters set forth in the defendant's answer. In her reply the complainant denied that Carter had concealed from the defendant the fact that the automobile had already been involved in a collision giving rise to a personal injury at the time when he applied for and paid the premium on said policy; and the complainant denied that the policy was null and void for any reason. The complainant also alleged in her reply that the defendant, at a time prior to the date when the policy was issued and countersigned by the defendant's agent, had full and complete knowledge of all matters set out as a defense in its answer, and for that reason was estopped to rely upon any alleged fraud; and that the defendant had waived any such defense as that set up in its answer.

The cause was heard at the April 1958 term of the court.

The complainant offered in evidence the automobile policy sued on, and the complainant testified as a witness in her own behalf. The complainant testified that she was injured on February 16, 1954, as a result of a collision between the 1949 Ford automobile which was being driven by Mrs. Carter and the automobile in which the complainant was riding; that the accident occurred about 3:15 o'clock P.M.; and that Mrs. Carter told her

at that time that she had insurance which would take care of the accident. The complainant stated that she sued Mrs. Carter thereafter and obtained a judgment against her for the sum of $3,000; that only $170 had been paid on the judgment; and that Mrs. Carter had filed a petition in bankruptcy. The record shows that it was agreed that such judgment had been rendered.

Three witnesses testified for the defendant. Houston Busby testified that he was employed as a line foreman for the Mississippi Power Company in February 1954, and that Charles L. Carter was working under him the day Carter's wife was involved in an automobile accident; that Carter was notified of the accident about 3 o'clock in the afternoon, and that Carter left the job immediately and did not return to work again that afternoon. Mrs. Beatrice Carter testified that the collision occurred about 3:15 o'clock P.M. on February 16, 1954, and that she was taken to the hospital immediately; that her husband, Charles L. Carter, came to the hospital a few minutes later, and remained at the hospital about 30 minutes and then left. Mrs. Carter stated that she did not know at the time the accident occurred that the insurance on the car had expired; but she learned later that the insurance had expired and that her husband had applied for and paid the premium on the policy sued on after the accident occurred. She said, "I know that we had an insurance policy which I later found out had expired, but, however, we thought since the policy was paid on the day of the accident, and it was dated back from the time it had expired, that we were safe and covered by the insurance, because the policy was dated back during the time of expiration date." She stated that sometime after the accident she and her husband received a policy of insurance from the State Farm Mutual Automobile Insurance Company, and she turned the policy over to her attorney. Wingo and Arrington, attorneys,

defended the suit which Mrs. Calhoun filed against her, and she paid them their fee.

L. H. Webb testified that he was office manager for Joe Morris Motors and a part-time insurance agent for the State Farm Mutual Automobile Insurance Company; that Charles L. Carter came to his office about 5 o'clock P.M. on February 16, 1954, and stated to him that he wished to pay his automobile insurance premium. Webb stated that he told Carter before taking his money that the insurance had lapsed on January 10, 1954, and that if he had paid it before January 20, he would have been afforded continuous coverage. Carter went ahead and paid the premium anyway to have the insurance reinstated, and on the same afternoon, after Carter had left his office, Webb made out a check for the amount of the premium and mailed it to the company at its office in Dallas, Texas. Webb stated that the next time he saw Carter was on February 24, when Carter came to his office to report an accident, which according to Carter's statement had occurred on February 17, 1954. As soon as Carter left his office, Webb called the Hattiesburg police department and learned that the actual date of the accident was February 16. Webb stated that this was the first knowledge that he had that Carter's automobile had been involved in an accident on February 16.

Webb stated that the next time he saw Carter was on March 20, 1954, when Carter came to his office to have his automobile insurance transferred from the automobile which had been involved in the accident to another automobile which he had acquired to replace the automobile involved in the accident. Webb stated that Carter at that time did not claim that the company was liable as a result of the accident which he had reported on February 24. The complainant's attorney objected to the statement, and the court sustained the objection. The defendant's attorney then asked Webb to state ''whether or not Mr. Carter at that time assented to your state-

ment that the accident of February 16 was not within the coverage of his policy?'' The complainant's attorney objected to the question, and the court sustained the objection. The defendant's attorney then made the following offer of proof: ''We proposed to show by this witness that at the time and place in question, this witness told Mr. Carter, unequivocally, that the February 16th accident was not in the coverage of the policy, and Mr. Carter made no protest or contradiction; in fact, he assented and acquiesced, and we submit it is highly competent.'' The complainant's attorney objected to the proffered evidence, and the objection was sustained.

On cross-examination Webb stated that he countersigned the policy sued on and mailed it to Carter on April 26, 1954. He also stated that after the accident occurred he forwarded the information which he had obtained concerning the accident to the company at its home office; and that he had full knowledge of the accident when he countersigned the policy and mailed it to Carter on April 26, 1954. On redirect examination Webb stated that he knew on March 20, 1954, that Carter was the owner of another car which was in substitution of the car described in the policy sued on. Webb was asked whether Carter had disposed of the automobile described in the policy prior April 26 and had replaced it with another automobile. The court sustained an objection to the question. Webb later stated that at the time he countersigned the policy and mailed it to Carter on April 26, 1954, Carter did not own the automobile described in the policy. That answer, however, on motion of complainant's attorney, was stricken from the record.

The complainant called as a witness in rebuttal Earl L. Wingo, an attorney of Hattiesburg, Mississippi, who had represented Mrs. Carter in the suit filed by Mrs. Calhoun against her in 1954. Wingo testified that he had written the insurance company a letter on March 23, 1954, advising the company of the suit and requesting

the company to defend the action if his clients had insurance with the company. Wingo received a reply to that letter on March 31 in which he was advised that the company was making an investigation of the matter under a non-waiver agreement, and if the company should decide that it had provided insurance protection to Mr. and Mrs. Carter under a policy of insurance, the company would assume the responsibility of furnishing a defense. On April 27 the company advised Wingo by letter that the policy was not in force and the company would not defend the suit.

The chancellor was of the opinion that, since the defendant had knowledge of the facts surrounding the collision on April 26, 1954, the date when the defendant's agent countersigned the policy of insurance and mailed it to Charles L. Carter, and since the defendant had not returned the premium and had made no effort to have the contract of insurance cancelled, the defendant had elected to waive its right to cancel the contract and the company was therefore bound by the terms of the contract. A decree was therefore entered in favor of the complainant against the insurance company for the amount sued for. From that decree the defendant has prosecuted this appeal.

The appellant's attorneys have argued four points as ground for reversal of the decree of the lower court: (1) That an insuring agreement is void where the contingency insured against has already occurred and its occurrence is unknown to the insurer but known to the insured; (2) that because the policy provision covering the prior accident was void, it could not be the subject of waiver; (3) that even if the void provision antedating coverage was subject to waiver, the evidence showed that the appellant did not waive its right; and (4) that the lower court erred in sustaining objections to the appellant's evidence showing the assured's acquiescence in the appellant's denial of coverage, for the reason that

such evidence would have negatived any inference of waiver.

■ ■ We think there was no liability under the insurance contract sued on in this case for the injury sustained by the appellee as a result of the accident which occurred on February 16, 1954. There is no dispute as to the material facts. The testimony clearly shows that when Carter applied for the insurance policy and paid the premium thereon to the appellant's soliciting agent on February 16, 1954, the accident causing the injury to the appellee had already occurred. That fact was known to Carter at the time he applied for the policy and paid the premium thereon, but was unknown to the company's soliciting agent. Carter concealed that fact from the company's agent and procured the issuance of a policy which was antedated so as to include the time at which the accident giving rise to legal liability occurred. By such concealment Carter procured the issuance of a policy which would not have been issued had the truth been made known to the agent. Carter not only concealed the fact that the accident had already occurred, but in making a report of the accident to the appellant's agent eight days later, Carter falsely represented that the accident had occurred on February 17, 1954.

■ ■ It is generally held that where at the time of an application for insurance there has been a loss but neither the applicant nor the insurer knew of this fact a recovery may be had on a policy subsequently issued, which was antedated so as to include the time at which the loss occurred. See Annotation, 132 A. L. R., 1325, and cases cited. ■ ■ But where one applies for a policy of insurance knowing that a loss has already occurred and conceals this fact and procures a policy to be antedated so as to cover the period when the loss occurred, the policy is void because of such fraud or concealment and no recovery can be had thereon. Nippolt v. Firemen's Ins. Co. (1894), 57 Minn. 275, 59 N. W.

191; Henshaw v. Insurance Co. of New York (1901), 36 Misc. 405, 73 N.Y.S. 1; Equitable Life Assurance Society v. McElroy (C.C.A. 8th Ct. 1897), 83 F. 631; Strangio v. Consolidated Indemnity & Ins. Co. (C.C.A. 9th Ct. 1933), 66 F. 2d 330; Continental Casualty Co. v. Lanzisero (1935), 119 N. J. Eq. 166, 181 A. 170; Millar v. New Amsterdam Casualty Co. (1936), 289 N.Y.S. 599, 248 App. Div. 272; Massachusetts Bonding & Ins. Co. v. Hoxie (1937), 129 Fla. 332, 176 So. 480; Gallagher v. New England Mutual Life Insurance Co. of Boston (1954), 33 N.J. Super. 128, 109 A. 2d 457; Hartford Accident and Indemnity Co. v. Breen (1956), 153 N.Y.S. 2d 732, 2 A.D. 271; State Farm Mutual Automobile Ins. Co. v. West (1957), 149 F. Supp. 289.

In Nippolt v. Firemen's Insurance Co. (1894), 57 Minn. 275, 59 N. W. 191, where a loss by fire occurred a few days after a policy of insurance on the property had expired, and the insured on learning of the loss and knowing that the agent who had issued the policy had not heard of it inquired of the agent if he had renewed the policy and immediately afterwards received a new policy from the agent which was dated back to the time of the expiration of the other policy prior to the fire and concealed such loss from the agent, and there was no agreement prior to the fire for the new insurance, it was held that the renewal policy was void because of the fraud of the insured and that it was immaterial whether such policy was actually drawn up and signed before or after the fire, since in either case there was no agreement to insure and the policy did not take effect until after the fire.

In Strangio v. Consolidated Indemnity & Insurance Company (C.C.A. 9th Ct. 1933), 66 F. 2d 330, the Court held that where an automobile, with knowledge of the applicant for liability insurance, was involved in an accident between the date of the application and the time when the contract came into existence, the applicant was

bound to disclose the accident to the insurer where the policy took effect as of the time antedating the accident, though there would be no duty of disclosure as to the accident unknown to the applicant. The Court in its opinion in that case said: "We see no reason why the rule referred to in the Springfield case (C.C.A.) 51 F. (2d) 714, 76 A. L. R. 1287, supra, should not be applied in cases of public liability insurance involving automobiles. Like a vessel at sea, an automobile may easily be involved in an accident without the knowledge of the owner. As to such accident, unknown to him, there would be no duty on the owner's part to disclose, during the pendency of the negotiations."

In the case of Continental Casualty Co. v. Lanzisero (1935), 119 N. J. Eq. 166, 181 A. 170, the Court held that an automobile liability insurer was entitled to cancel a policy obtained by the fraudulent concealment of the fact that an accident had happened before the application for the policy was made, as against both the insured and the party injured in an accident, notwithstanding a statute making the insurer's liability absolute whenever damage covered by a motor vehicle liability policy issued under the statute occurs. (N. J. St. Annual 1931, sec. 135-119 et seq.; sec. 135-128, subd. (a).

In the case of Millar v. New Amsterdam Casualty Co. (1936), 289 N. Y. S. 599, 248 App. Div. 272, the Court held that the acceptance of an automobile liability policy and payment of premiums after the happening of an accident without disclosing such fact to the insurer would be a fraud upon the insurer rendering the insurance contract void. The Court in its opinion in that case said: "The applicant had full knowledge of the accident when it occurred, as he participated in it. Under such circumstances, it was the express duty of Kauffman to notify the defendant at once of the substantial increase in hazard resulting from the accident. * * * He made no attempt to do this. In fact, he even concealed the fact of

the accident from the insurance agency in the interview of January 22d. His failure to notify the defendant vitiates the acceptance of his application by the defendant when it acted in complete ignorance of the changed condition of the risk covered. Snow v. Mercantile Mutual Ins. Co., 61 N. Y. 160; Goldstein v. New York Life Ins. Co., supra, (176 App. Div. 813, 162 N. Y. S. 1088, Affirmed, 227 N. Y. S. 575, 124 N. E. (898); Green v. Merchants' Ins. Co., 10 Pick (27 Mass.) 402.''

In the case of Matlock v. Hollis (1941), 153 Kan. 227, 109 P. 2d 119, 132 A. L. R. 1316, the Court said:

''While the propriety of permitting the antedating of insurance policies may be debatable, the legality of the practice is well established, provided, of course, that good faith on both sides is present. Parties to the contract have a right to agree on the beginning as well as the ending of the term covered by the policy. We have found no authority, however, either textbook writer or decided case, where the validity of such a contract is not dependent upon an uncertain and unknown loss. There must be mutuality of risk. There must be no knowledge by either party, undisclosed to the other, at the time the contract is made which destroys the uncertainty of loss as far as he is concerned.

''* * *

''The distinction between a fraudulent concealment of a loss already suffered, in order to secure insurance coverage of such loss, and fraudulent representations as to other matters which might or might not have led the insurance carrier to refuse the risk, is apparent. If A applies for fire insurance upon a building and fraudulently represents that he has had no fire losses, the policy may be voidable and subject to cancellation by the insurer upon discovery that the insured had had losses under circumstances making the new risk undesirable. But if he applies for insurance knowing that the building has already been destroyed by fire, conceals

the fact of the prior loss and secures a policy antedated to cover the time of the loss, the policy is void and no liability ever attaches. It is void because there is no uncertain event, no contingency or risk mutual in character which is the basic factor in insurance contracts. The principle is akin to the rule that ''if no insurable interest exists, the contract is void.' 29 Am. Jur. p. 289. There are many cases where antedated fire insurance policies have been upheld where the property insured had been destroyed prior to the application, but the loss was unknown to the insured. The uncertainty was equally present in the minds of both parties. The premium was paid and the liability assumed for the agreed purpose of covering the uncertainty. This class of policy has been especially common in marine insurance providing protection 'lost or not lost' of vessels which have previously sailed. But concealment of a known loss obviously destroys the very basis upon which such antedated policy rests. To put it another way: While insurance contracts are not technically wagering contracts, an applicant for insurance stakes his premium payment on the chance that there will be a loss. By the same token, the insurance carrier takes a chance—the heavy odds being represented by the face of the policy as against the premium—that there will be no loss. But if the applicant knows his house has already burned down, he is taking no chance, and the policy is not merely voidable, but is void. The implied condition requisite to the contract, is absent.

''The principle just stated is applicable to fire, life, compensation, or any other sort of insurance. If the employer conceals the fact of an injury to an employee which would be covered by an antedated policy which he accepts, he is taking no chance—the contingency, the risk is not mutual. He is seeking indemnity under a contract predicated on an uncertain event, when as to him the event has ceased to be uncertain. We have found

no authority which would make such a contract merely voidable. It is void ab initio.''

■■■ In the case that we have here, as in Matlock v. Hollis, supra, ''The conclusion is inescapable that the concealment of the injury went to the very heart of the contract, made it void at its inception, and no one can predicate any rights upon it.'' Carter, having no rights under the policy as against the insurance company by reason of the fraud, could not create for the claimant, the appellee in this case, a right of recovery against the company, which right of recovery she did not have at the time of the injury.

''Where the injured person is expressly or impliedly given a right of action against insurer under, and in accordance with, the terms of the policy, the injured person has the same rights as insured would have had if he had paid the judgment, and he has the benefit of any estoppel or waiver which operates in favor of insured. The injured person's rights, however, are no better than those of insured, and insurer may assert any defense against the injured person which it could assert in a suit by insured.'' 46 C. J. S., 112, Insurance, par. 1191 b (3). See also Hartford Accident and Indemnity Company v. Breen (1956), 153 N. Y. S. 2d Series, 732, 2 A. D. 2d 271; State Farm Mutual Automobile Ins. Co. v. West (1957), 149 F. Supp. 289.

■■■ The court's refusal in this case to validate the policy as to the accident complained of takes from the appellee no rights, no relief, to which she was entitled. Neither Carter nor his wife had any automobile insurance at the time the accident occurred. No policy had been issued and none even applied for. The appellee is not deprived of any rights, actual, or potential then existing. Had the policy been merely voidable through fraudulent representations not affecting the very existence of a risk, a different question would be presented. But under the facts disclosed by the record the appel-

lant never became liable on the policy sued on for damages resulting from the appellee's injury, and this is true whether Webb countersigned the policy as soliciting agent at the time the premium was paid on February 16, 1954, or two months later after the appellee had filed her suit against Mrs. Carter. American Central Insurance Company v. Antram (1905), 86 Miss. 224, 38 So. 626.

There is no proof in the record to show that the appellant ever agreed to waive its defense of fraud in the procurement of the policy. Wingo's testimony clearly indicates that the policy was in the possession of Mrs. Carter when she called to see him about defending the suit; and Wingo's testimony clearly shows that there was no waiver. The fact that Webb, for some unexplained reason, countersigned the policy and mailed it to Carter on April 26, 1954, which was approximately four weeks after Wingo received the company's first letter of March 31, 1954, did not deprive the company of its right to deny liability on the policy after it had completed its investigation of the claim. Webb was a mere soliciting agent, and there is no testimony in the record which even suggests that Webb had authority to waive any rights of defense to a suit on the policy which the appellant might have had. Webb made no explanation of his action in countersigning the policy on April 26, 1954, or of his failure to countersign the policy before that date.

■■■ The chancellor, in our opinion, erred in holding that, since the appellant had not returned the premium and had made no effort to have the contract of insurance cancelled, the appellant had elected to waive its right to cancel the contract. The appellant, under the facts in this case, was not required to return the premium as a condition precedent to the avoidance of liability on the policy. "The general rule is that a return of the premium is not essential to the avoidance of a policy, nor is its retention a waiver, especially where the in-

sured was guilty of fraud in obtaining the policy, or where knowledge of the ground of avoidance is first obtained after a loss." 29 Am. Jur., 659, 660, Insurance, par. 862. See also Aetna Insurance Co. v. Mount (1907), 90 Miss. 642, 44 So. 162, 45 So. 835, 15 L. R. A. (N.S.), 471; Home Insurance Co. v. Cavin (1933), 167 Miss. 202, 149 So. 800.

Neither was the appellant required to take affirmative action to have the contract of insurance cancelled. In the absence of special circumstances fraud is fully available to the insurer as a defense to an action at law upon the policy. 29 Am. Jur. 282, Insurance par. 307, and cases cited. No special circumstances existed in this case, affecting the appellee's claim, which made it necessary for the appellant to file a suit for a cancellation of the policy. The record shows that Mrs. Carter's attorneys were definitely advised on April 27, 1954, that the policy was not in force and the company would not defend the suit against her.

In view of the conclusions which we have reached on the merits of the case it is not necessary for us to consider the appellant's assignments of error based upon the chancellor's rulings on the admissibility of evidence offered on behalf of the appellant for the purpose of disproving any inference of waiver.

For the reasons stated above the decree of the lower court is reversed and judgment will be entered here in favor of the appellant.

Reversed and judgment rendered in favor of appellant.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.