ANDREW NIPPOLT *vs.* FIREMEN'S INS. CO. OF CHICAGO.

Argued May 2, 1894.  Reversed May 14, 1894.

No. 8660.

**Custom for insurer to renew expiring fire policy.**

A particular custom or usage of trade, to be valid, must be uniform and certain, and, in the absence of special agreement, not optional with those to whom it applies, and the party bound by it must have knowledge of it, unless it is so general, well established, and notorious that he may be presumed to have notice of it, or unless he is engaged in the same line of business himself to such an extent that knowledge of it may be presumed. *Held,* a person having no connection with the insurance business except occasionally to take out policies of insurance on his property is not ordinarily presumed to have knowledge of its customs. *Held,* further, a person having no knowledge or notice of such a custom cannot take advantage of it. *Held,* further, that plaintiff failed to prove any such certain and uniform custom for insurance agents to renew expiring fire insurance policies in the same or other insurance companies without the special request of the insured, either express, or implied from the particular course of dealing between him and the agent.

**Antedated policy obtained after loss.**

Where a loss by fire occurred a few days after a policy of insurance on the property expired, and the insured, on learning of the loss, and knowing that the agent who had issued the policy had not learned of it, inquired of such agent if he had renewed the insurance, and immediately afterwards received a new policy from the agent, dated back to the time of such expiration prior to the fire, he concealed from the agent the fact of such loss, and there being no agreement prior to the fire for such new insurance: *Held,* such renewed policy was void for the fraud of the insured. *Held,* further, it is immaterial whether such new policy was actually drawn up and signed before or after the fire; in either case, there was no agreement to insure, and the policy did not take effect until after the fire.

Appeal by defendant, the Firemen's Insurance Company of Chicago, Ill., from an order of the District Court of Ramsey County, *Charles D. Kerr,* J., made September 25, 1893, denying its motion for a new trial after verdict in favor of plaintiff, Andrew Nippolt, for $857.20.

*Kueffner, Fauntleroy & Searles,* for appellant.

*T. R. Palmer,* for respondent.

CANTY, J. Plaintiff was the owner of a carriage manufacturing establishment in St. Paul. His brother-in-law was the special agent of the Denver Insurance Company, and on January 9, 1891, he procured plaintiff to take out a policy of insurance in that company, insuring plaintiff's stock in trade to the amount of $1,000 for one year, and the policy was signed and delivered by L. R. Ware, the local agent. Plaintiff, during the year, procured from other agents two other policies of insurance in other companies on this stock for the amount of $1,000, each of which was in force at the time of the fire hereinafter mentioned. The policy issued by the Denver Insurance Company expired on January 9, 1892, and in the mean time it had gone out of business in this state. Five days later—on the night of January 14th—plaintiff's stock in trade was damaged by fire. Next morning, on discovering his loss, plaintiff telephoned to the insurance agents, E. M. & L. W. Ware (who had succeeded L. W. Ware in business), and asked them if the policy in the Denver Insurance Company, which had expired, had been renewed. They answered that it had, and he immediately sent his bookkeeper to their office to get it, and they delivered to him the policy here in suit, dated January 9, 1892, purporting to be issued by the defendant company, and to insure plaintiff's stock in trade against loss by fire to the amount of $1,000 for one year from that date. At the time the agents delivered the policy to the bookkeeper they were ignorant that the fire had occurred, but learned of it immediately afterwards, and demanded a return of the policy, and disavowed any liability of defendant under it.

Plaintiff's loss was $2,250. He recovered from the other companies $2,000, the amount of the other two policies. But all three of these policies contained pro rata clauses, and he entered into an agreement with the other two companies to prosecute this suit, and, if successful, to pay them back the excess over their pro rata share; and accordingly this suit was brought to recover of defendant one-third of the loss, and plaintiff recovered a verdict.

The defendant claims that said policy so received by plaintiff from its agents after the fire was in fact drawn up between the time of the telephone inquiry and the time the bookkeeper of plaintiff received it at the agents' office. Plaintiff claims that, it being dated on January 9th,—five days before the fire,—it was a question

for the jury whether it was not drawn up on that day; but for the reasons hereinafter stated we are of the opinion that it is immaterial on which day it was in fact drawn up.

The plaintiff does not claim that before the fire he ordered any renewal of the insurance which would expire with the Denver policy, except, as he claims, that such order would be implied by custom. He claims that there is a universal custom in this state, long prevailing between insurance companies, agents, and parties insured, to renew policies on the same terms, unless notice be given to the contrary by the agent to the insured.

Whatever might be claimed for such a custom, it is only necessary to remark that his proof on the trial wholly failed to establish it. Most of the insurance agents called by him as witnesses to prove this custom testified that they had a class of customers with whom they had an understanding to renew policies in the same or other companies; that they had another class to whom they usually sent notice at or before expiration, and solicited renewal, and sometimes sent them new policies, with the request, if not accepted, to return them; and that they had other customers, whose risks were undesirable, to whom they might give notice and they might not.

But all of the witnesses testified in substance that, except as to the first class, the issuance and acceptance of a renewal policy was wholly optional; and none of the witnesses except one or two knew anything about what the custom was outside of his own office.

It is well settled that a custom, to be valid, must be uniform and certain. Lawson, Usages & Cust. §§ 9, 10. It must be compulsory, and of binding force; not optional. Id. § 11. The party to be bound by the custom must have knowledge of it. Id. § 19. The custom may be so general, long-established, and notorious that the party is presumed to have knowledge of it, and he may also be engaged in the same line of business himself to such an extent that he may be presumed to have knowledge of its customs. But a person having no connection with the insurance business except occasionally to take out policies of insurance on his own property is not presumed to have knowledge of its customs. *Hartford P. Ins. Co.* v. *Harmer,* 2 Ohio St. 452; *Hill* v. *Hibernia Ins. Co.,* 10 Hun, 26.

It does not appear that plaintiff had any knowledge of any such custom; on the contrary, it sufficiently appears that he had not. Then, if such a custom existed, and it was valid, it would not bind the plaintiff to pay the premium for such a renewal of policy; and, unless he was himself bound by such a custom, he cannot hold the opposite party. A party having no knowledge of a custom cannot take advantage of it. Lawson, Usages & Cust. § 28. Not only had plaintiff no knowledge of any such custom, but he testifies that he expected the insurance to be kept up in the Denver Company. Then it necessarily follows that plaintiff was not bound to accept this policy, or pay the premium on it, until he actually did accept it, which was after the fire; and, even if the policy was drawn up before the fire, as plaintiff claims, it did not become a contract of insurance between him and defendant until he so accepted it; and it was a fraud on his part thus to enter into such a contract after the loss, knowing that loss and failing to disclose it to the other party to the contract, whom he knew was ignorant of it, and thereby procure that other party to insure him against a loss which had already occurred. For these reasons plaintiff was not entitled to recover, and the order denying defendant's motion for a new trial should be reversed, and a new trial ordered.

So ordered.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 191.)