MARGARET OSTER v. JAMES A. RILEY, d.b.a.
RILEY CONSTRUCTION COMPANY, AND ANOTHER.
AETNA CASUALTY & SURETY COMPANY, RELATOR.

150 N. W. (2d) 43.

March 31, 1967—No. 40,042.

*Firestone, Fink, Krawetz, Miley & O'Neill* by *James P. Miley*, for relator.

*Lawrence Hazen, Hansen & Hazen, Edward B. McMenomy,* and *McMenomy & Hertogs,* for respondent Oster.

*Beaudoin & Pavlak, Irving W. Beaudoin,* and *James W. Kenney,* for respondent Riley.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission affirming, as modified, the findings and determinations of its referee awarding the petitioner compensation and directing payment of medical, hospital, and funeral bills.

The petitioner, Margaret Oster, widow of James Oster, filed a petition with the Industrial Commission for compensation and benefits under the Workmen's Compensation Law. It is conceded that the death of

Oster resulted from a personal injury arising out of and in the course of his employment. The sole issue is whether the workmen's compensation insurance policy under which the widow claims was in force at the time of her husband's collapse.

The undisputed facts are these: On September 2, 1961, employer-respondent James Riley, who was about to undertake his first independent construction job, conferred with Murry Krug, an agent who had sold insurance to Riley's family for many years. Riley applied at that time for manufacturers' and contractors' coverage, but declined to order workmen's compensation insurance because he did not expect to have any employees for a long time. It was understood that as soon as he had someone on his payroll he would apply for a workmen's compensation policy.

On the evening of Thursday, September 7, 1961, Riley made arrangements to hire Oster, who reported for work at 9 a. m. the following Monday, September 11, at a lot where Riley was building a house. Oster worked under Riley's supervision until shortly after 10 o'clock that morning. At about 10:30 a. m. Riley found him lying on the ground and in distress. Riley and another man then took Oster to a nearby hospital, where his arrival was recorded at 11:10 a. m. Oster died 2 days later of an acute coronary thrombosis precipitated by the stress of physical work.

Riley reported Oster's illness and hospitalization to Krug on September 12, 1961. On September 18, one week after the accident, Krug mailed to Riley a policy of workmen's compensation insurance effective at 12:01 a. m., September 11. The policy had been sent to Krug by relator, Aetna Casualty & Surety Company.

## I.

Much of the testimony at the Industrial Commission hearing concerned the time at which Riley called Krug's insurance agency to order workmen's compensation insurance. Aetna contends that Riley did not place the order until after he knew that Oster had collapsed on the job. Riley testified consistently that he made the call between 9:45 and 10 a. m., September 11, 30 to 45 minutes before he discovered Oster's col-

lapse; that Krug was not in; that he told Krug's secretary, Mary Elverhoy, that he wanted the insurance to take effect that day; and that Miss Elverhoy said she would talk to Krug. The latter testified that he called in to his office at about 12:15 p. m. that day and told Miss Elverhoy to order the policy Riley had requested from an underwriter at Aetna Casualty & Surety Company. Aetna was one of seven companies which Krug could bind for workmen's compensation insurance. Miss Elverhoy testified that she called the underwriter at about 1:30 p. m. that day. She also stated that Riley did not call her at Krug's office until 11 o'clock that morning at the earliest, which, if correct, would be half an hour after he discovered Oster's collapse.

The determination of the factual issue depends on the credibility of the testimony of James Riley and Mary Elverhoy. The referee, whose findings were affirmed by the commission, accepted Riley's version. Although the sequence of events related by Riley may raise some doubts, we cannot say that the commission's conclusion finds no support in the record. [1] The other issues raised by Aetna must therefore be considered in the light of the finding that Riley called Krug's office before discovering Oster's collapse.

## II.

By its terms, the policy under consideration here became effective at 12:01 a. m. on September 11, some 10 hours before the onset of Oster's disability. If the policy did not cover the accident that morning, it must be for some reason to be found outside the four corners of the document. In the absence of fraud, the parol evidence rule precludes the introduction of evidence to show a variation in the written contract.[2]

Aetna cites Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. (2d) 28, for the proposition that "a binding contract of insurance does not become effective until one of the possible insurers is selected by the agent." We held in that case (214 Minn. 252, 8 N. W. [2d] 30):

"* * * [W]here an application for insurance is made to an agent who

---

[1] Hommerding v. Clarence Landwehr Heavy Moving, 273 Minn. 40, 139 N. W. (2d) 482.

[2] 7 Dunnell, Dig. (3 ed.) § 3368, and cases cited under note 73.

represents several companies, no contract of insurance is *engendered* between the insured and any particular company until such company is designated by the agent \* \* \*." (Italics supplied.)

In the instant case there was no contract until 12:15 p. m. on September 11, when Krug selected Aetna from among seven possible insurers. But when he did select Aetna, a binding contract resulted—a contract which by its terms became effective at 12:01 a. m. that day. The flaw in Aetna's argument is its failure to distinguish between the time the policy went into *existence* and the time it went into *effect*. The first event is governed by the acts of the parties, the second by the terms of the policy.

Aetna concedes that in the absence of fraud the legality of predating and antedating a policy of insurance is well established.[3] We stated in Wales v. New York Bowery Fire Ins. Co. 37 Minn. 106, 109, 33 N. W. 322, 323, that if at the time the application for insurance was made both parties were ignorant of a prior loss, "it would have been competent for them, by antedating the policy, to have made it retroactive."

---

[3] 7 Appleman, Insurance Law and Practice, § 4266. The author criticizes a Federal case applying California law, Strangio v. Consolidated Ind. & Ins. Co. (9 Cir.) 66 F. (2d) 330, which held that the insurer was entitled to cancel a predated policy where the insured's broker failed to timely notify the insurer of a loss occurring at a time when said broker knew the insurance could not yet have been effected. The facts of Strangio are unusual: The applicant applied to a broker (whom the court emphasized was his, not the insurer's, agent) on a Saturday. On Sunday morning, the broker mailed to Insurer A an application for a predated policy. At 2:30 that afternoon the loss occurred, and the applicant notified his broker an hour later. On Monday Insurer A received the application but, because it did not write the type of insurance requested, telephoned Insurer B, requesting that it issue the policy, which Insurer B did on Tuesday. The applicant's broker did not mail any notice of the loss until Tuesday. Insurer A received said notice Wednesday. The court held in favor of Insurer B on the ground that no disclosure was made to it. It held that Insurer A was not Insurer B's agent. It will be noted that the applicant's and his broker's knowledge of the loss came at a time when they must have known no insurance had yet been effected and before any application had been made to Insurer B.

The application of this principle to workmen's compensation is discussed in 2 Larson, Workmen's Compensation Law, § 92.20:

"The only situation in which the insurance would be defeated for all purposes by act of the employer is that in which the insurance is absolutely void *ab initio,* rather than voidable; this would occur if the employer attempted to insure against an accident that had already occurred, by pre-dating the insurance and fraudulently concealing the known existence of an injury within the period so covered. *But if the happening of the accident during the period covered by the antedated policy was unknown to both parties, the insurance carrier would be liable,* since such liability does not offend the basic principle that there cannot be insurance against a known loss." (Italics supplied.)

See, Matter of Weydman v. Niagara Boiler Works, 264 N. Y. 503, 191 N. E. 536.

The commission found Riley to have acted in good faith. Thus, the principal question in this appeal is whether Riley's failure to notify Krug's office at the first possible moment after his knowledge of Oster's accident constituted as a matter of law a fraud upon the insurance company. It seems clear that it would not constitute a fraud if Riley thought, at least if he reasonably thought, that by that time he was already insured.

Riley could reasonably have understood that he would be insured, i. e., that the company would be "bound," as soon as Krug's secretary told him that Riley wanted insurance and Krug selected a company to carry such insurance.[4] See, Nehring v. Bast, 258 Minn. 193, 103 N. W. (2d) 368, 85 A. L. R. (2d) 1400; Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. (2d) 28; Glens Falls Ind. Co. v. D. A. Swanstrom Co. 203 Minn. 68, 279 N. W. 845. In fact, this occurred about 12:15 p. m., but Riley could have expected, and reasonably

---

[4] According to Riley's testimony it had been his and his father's experience, based upon numerous house, boat, and car policies placed with Krug, that to obtain insurance, they would merely call Krug's office and give the information to Krug, or if he wasn't there, to whoever was there. When Riley had talked to Krug on September 2, Krug told him that whenever he needed the workmen's compensation insurance, he should "just call in."

so, that it would occur much sooner. There is nothing in the record to show that Riley should have suspected that Krug would not arrive at his office shortly after Riley's call. He might have reasonably expected Krug was merely a little late in arriving on the Monday morning in question. His secretary testified that he did not come to the office at all that day and did not telephone until 12:15 p. m. Riley in no way could be charged with that knowledge.

It is clear that an applicant, even where he knows the insurance has not yet been effected, is held to no higher standard than that of reasonable care in notifying the insurer of a loss occurring before the insurance becomes binding. See, M'Lanahan v. The Universal Ins. Co. 26 U. S. (1 Peters) 170, 7 L. ed. 98. Thus, even if Riley should have anticipated the insurance was not yet effected, the commission could have found he had no duty to notify Krug until after 11:10 that morning when Riley had delivered Oster to the hospital. The commission could find that a reasonable man would attend to a sick employee first.

It was open to the commission to find that by 11:10, Riley justifiably thought he was covered by insurance. If such was the case, Riley was not obliged to notify Krug of the loss at the first reasonably possible moment. In Glens Falls Ind. Co. v. D. A. Swanstrom Co. 203 Minn. 68, 73, 279 N. W. 845, 847, this court stated:

"* * * Lack of disclosure of changed conditions coming into being after the application and before the release of the policy does not conclusively prove fraud. * * * The trial court finds no fraud or deceit exists. There is nothing in the record to warrant a reversal of this finding."

That one is under no obligation to inform the insurer of a loss if, at the time he should otherwise notify, he reasonably thinks he is already insured, is clearly shown in Matter of Orto v. Poggioni, 245 App. Div. 782, 281 N. Y. S. 16, affirmed, 271 N. Y. 551, 2 N. E. (2d) 690. In that case, the employer talked to a broker about a workmen's compensation policy several days prior to the accident. When the loss occurred, the employer thought he was covered. In fact, the binder was not made until some 4½ hours later (271 N. Y. 551, 2 N. E. [2d] 690). The court

held the predated policy effective, emphasizing that the employer, having spoken to a broker several days before the accident, thought he was covered, and that his good faith was not questioned nor was fraud alleged.

It has been held that an insurer is protected from liability upon a predated insurance policy if it appears that the insured concealed his knowledge of a loss at a time he knew the insurance had not yet been effected. In Wales v. New York Bowery Fire Ins. Co. 37 Minn. 106, 33 N. W. 322, the applicant through an agent requested certain insurance of defendant's agent. But the insurance requested was of a type such that defendant's agent "could not accept the risk," so he set the application aside and took no further action on the matter thinking he would hear further from the applicant's agent about it. Since he did not, 3 days after the loss and applicant's discovery thereof, defendant's agent went to applicant's office, whereupon it was agreed that insurance upon terms entirely different from those of the original application would be concluded. The applicant subsequently sued for the loss. This court reversed a verdict for the applicant, explicitly stating that the time of the agent's visit to the applicant's office must be taken as the date of the application, and that therefore the insurance did not cover because of the applicant's fraudulent concealment of the loss at the time of application. The court stated that had defendant's agent accepted the risk on the terms of the original application, and written up the policy accordingly, a different question would have been presented.

Nippolt v. Firemen's Ins. Co. 57 Minn. 275, 59 N. W. 191, also involved an application made with knowledge of the loss.

Cases decided by the courts of other states to the effect that there is no liability under a predated insurance policy if the insured or *his* agent concealed knowledge of a loss at a time he knew the insurance had not yet been effected are likewise not in point. In the following cases the applicant himself knew of the loss or change of material facts before his application: Matlock v. Hollis, 153 Kan. 227, 109 P. (2d) 119, 132 A. L. R. 1316; Hare & Chase, Inc. v. National Surety Co. (2 Cir.) 60 F. (2d) 909 (concealment during applicant's negotiations with in-

surer as to rates and deductible amount, thus before applicant's *final* application).

In the following cases the failure to disclose preceded application by one who the court emphasized was applicant's, and not the insurer's, agent: Hansen v. Continental Cas. Co. 156 Wash. 691, 287 P. 894 (both agent and applicant knew of loss); Century Ind. Co. v. Jameson, 333 Mass. 503, 131 N. E. (2d) 767 (only applicant knew, but court stated that by agency principles it was same as if applicant himself had ordered the policy after knowledge of the loss).

In the following cases failure to disclose occurred at a time when the applicant knew or must have known the insurance had not yet been effected: Millar v. New Amsterdam Cas. Co. 248 App. Div. 272, 289 N. Y. S. 599 (loss known within hours of application to broker who made it clear to applicant he had no power to bind the company); Carroll v. Preferred Risk Ins. Co. 34 Ill. (2d) 310, 215 N. E. (2d) 801 (application at 5 p. m., loss known at 10 p. m.).

In brief, if there was no fraud, and the insurance policy, by its terms, took effect at 12:01 a. m. on September 11, the fact that it was not applied for until 9:45 or 10 that morning and that the agent did not select the company in which to place it until 12:15 that afternoon is no bar to recovery for a loss arising out of an accident which took place at 10:30 a. m. For the same reasons, the commission was correct in rejecting relator's argument that Riley should be held liable jointly as a self-insurer because at least part of the work which led to the employee's injury was performed before the insurance was ordered. It is not the time of the application that governs; it is the time printed on relator's own insurance policy.

### III.

The commission's opinion refers to Aetna's issuance of the written policy as "in effect a ratification of the oral binder made by the insurer's agent for coverage commencing at 12:01 a. m. September 11, 1961." We do not find it necessary to reach this question. If there was no fraud, no other breach has been suggested, and there was nothing for the company to waive, by failure to return premiums or assessments or otherwise. See, 7 Appleman, Insurance Law and Practice, § 4266; Glens

Falls Ind. Co. v. D. A. Swanstrom Co. 203 Minn. 68, 279 N. W. 845; Seavey v. Erickson, 244 Minn. 232, 69 N. W. (2d) 889, 52 A. L. R. (2d) 1144.

It is our opinion that the decision of the Industrial Commission should be affirmed. Petitioner is allowed $250 attorney's fees on this appeal.

Affirmed.

OTIS, JUSTICE (dissenting).

Because in my opinion the commission's decision is contrary both to public policy and to the great weight of authority, I would reverse. Even accepting the employer's version of the facts, as we must, I do not agree that the commission should be sustained.[1]

The majority's decision is based on the premise that both the insured and the insurer were ignorant of the loss at the time the policy became effective. Authority is cited for upholding policies written under these conditions. However, in the instant case the facts are otherwise. The commission's findings adopt Riley's testimony that the accident occurred about 10:30 a. m. on September 11. There is no claim that Krug bound Aetna before 12:15 p. m. when he called his office and received Riley's message. At that moment Krug was wholly unaware that the loss had already occurred, while Riley, the employer, not only was present at the time of the employee's illness but personally transported him to the hospital.

Cases which permit retroactive coverage where both the insured and insurer are ignorant of an antecedent loss have no application. In neither Matter of Orto v. Poggioni, 245 App. Div. 782, 281 N. Y. S. 16, nor

---

[1] I share the doubts expressed by the majority concerning Riley's unconvincing explanation of the sequence of events. He testified that he was obliged to go 4 or 5 blocks to make the first phone call to Krug's office and that when he returned about 10 o'clock he found Mr. Oster in some distress as though "the fumes of the tar were affecting him." In 15 minutes Riley claims he again left for the same phone booth several blocks away to make a call to the lumber company. He offered no explanation for not having made the two calls on the same trip. Upon returning to the job the second time he says he found Oster suffering from the attack which subsequently caused his death.

Matter of Weydman v. Niagara Boiler Works, 264 N. Y. 503, 191 N. E. 536, cited by the majority, does it appear that the employer knew of the loss after it occurred but before the contract was entered.

The issue then is whether or not, where there is no coverage at the time of an accident, an oral binder imposes liability retroactively if made when neither the agent nor the insurance company had knowledge of the loss but the insured was fully aware of it and failed to disclose it between the time of the application and the time the binder became effective.

The case of Wales v. New York Bowery Fire Ins. Co. 37 Minn. 106, 33 N. W. 322, is virtually identical on the facts.[2] There the insured first had knowledge of the loss *after* he had applied for insurance but before it was accepted. The court speaking through Mr. Justice Mitchell held (37 Minn. 109, 33 N. W. 323):

"If at that time *both* parties had been ignorant of the loss, it would have been competent for them, by antedating the policy, to have made it retroactive. But in fact the plaintiff then knew that the property had been destroyed, but did not communicate that fact to defendant's agent, who, in ignorance of the loss, accepted the risk, and issued the policy. Under these circumstances, *the policy is void,* and does not cover the loss." (Italics supplied in part.)

The Wales case is in harmony with a long line of authority adopted in both state and Federal courts dating as far back as M'Lanahan v. The Universal Ins. Co. 26 U. S. (1 Peters) 170, 184, 7 L. ed. 98, 105. In M'Lanahan the United States Supreme Court observed that contracts of insurance are *"uberrimae fidei"*[3] and held that where a party orders insurance and afterwards has knowledge of the loss he must communicate that information to the agent as soon as due and reasonable diligence permits in order to countermand it or lay the facts before the insurer. Failure to communicate the information where it can be done with reasonable diligence renders the policy void, the court there held.

---

[2] 1 Joyce, Law of Insurance (2 ed.) § 107, note 8.

[3] "A phrase used to express the perfect good faith, concealing nothing, with which a contract must be made; * * *." Black, Law Dictionary (4 ed.) p. 1690.

Stipcich v. Metropolitan Life Ins. Co. 277 U. S. 311, 316, 48 S. Ct. 512, 513, 72 L. ed. 895, 898, a leading case decided one hundred years later, held as follows:

"Insurance policies are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. * * *

* * * * *

"* * * If, while the company deliberates, he discovers facts which make portions of his application no longer true, *the most elementary spirit of fair dealing would seem to require him to make a full disclosure.* If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, * * * or if a policy has been issued, it has a valid defense to a suit upon it." (Italics supplied.)

While we noted by way of dictum in Glens Falls Ind. Co. v. D. A. Swanstrom Co. 203 Minn. 68, 279 N. W. 845, that failure to disclose a loss, after the application and before the issuance of the policy, did not conclusively constitute fraud, we had no occasion in that case to actually decide the issue. There the matter was disposed of on the narrow grounds that there was an oral binder which gave coverage prior to the loss.

A number of other Federal courts as well as appellate courts in Kansas, New York, Massachusetts, Washington, and Illinois have passed on the same or similar questions.[4] They have without exception declined to give coverage. In Matlock v. Hollis, 153 Kan. 227, 233, 109 P. (2d) 119, 123, 132 A. L. R. 1316, 1321, the court held that antedated contracts of insurance are valid provided neither party knows of the loss "at the time the contract is made." There the court said (153 Kan. 235, 109 P. [2d] 124, 132 A. L. R. 1322):

---

[4] Hansen v. Continental Cas. Co. 156 Wash. 691, 696, 287 P. 894, 896; Hare & Chase, Inc. v. National Surety Co. (2 Cir.) 60 F. (2d) 909, 912. In Century Ind. Co. v. Jameson, 333 Mass. 503, 131 N. E. (2d) 767, the loss was known to the insured before his agent made application, and the court commented with approval on the insured's duty to keep the insurer informed.

"* * * If the employer conceals the fact of an injury to an employee which would be covered by an antedated policy which he accepts, he is taking no chance—the contingency, the risk is not mutual. He is seeking indemnity under a contract predicated on an uncertain event, when as to him the event has ceased to be uncertain. We have found no authority which would make such a contract merely voidable. *It is void ab initio."* (Italics supplied.)

In the Matlock case the knowledge of loss did not come to the insured between the time of application and the time the contract became effective. Nevertheless, it did announce a principle followed in other jurisdictions that the policy is void where ignorance of the loss is not mutual when the contract is entered.

A leading Federal case is Strangio v. Consolidated Ind. & Ins. Co. (9 Cir.) 66 F. (2d) 330. The court was there dealing with an automobile liability policy where the insured learned of the loss *after* the application was made but before it was accepted. The Court of Appeals for the Ninth Circuit held that an antedated policy subsequently issued was properly canceled since the insured was under a continuing duty to disclose the loss before the policy was furnished.

The New York case of Millar v. New Amsterdam Cas. Co. 248 App. Div. 272, 289 N. Y. S. 599, is also squarely in point. There, as here, the insured had notice of a loss *after* the application but before the policy became binding. Applying the principles announced in the M'Lanahan case, the New York court held (248 App. Div. 277, 289 N. Y. S. 605):

"* * * The applicant had full knowledge of the accident when it occurred, as he participated in it. Under such circumstances it was the express duty of Kauffman to notify the defendant *at once* of the substantial increase in hazard resulting from the accident. He could easily have done this not only by communicating with New York by telegraph or telephone, but also by communicating with the Hudson-Mohawk Brokerage, Inc. He made no attempt to do this. In fact, he even concealed the fact of the accident from the insurance agency in the interview of January twenty-second. His failure to notify the defendant vitiates the acceptance of his application by the defendant when it acted in com-

plete ignorance of the changed condition of the risk covered." (Italics supplied.)

Finally, the problem was dealt with by the Supreme Court of Illinois recently in Carroll v. Preferred Risk Ins. Co. 34 Ill. (2d) 310, 215 N. E. (2d) 801. The issue there was whether the provisions of an uninsured-motorist policy obtained. In that case coverage was claimed for a loss which occurred before automobile liability insurance was retroactively written but *after* the application was made. The insured had knowledge of the loss during the interval but the insurer did not. The Illinois court held that the relationship between an applicant and an insurer requires good faith on the part of the applicant and imposes on him the obligation to notify the insurer of any changed condition materially affecting the risk during the pendency of the application. The court said that the application constitutes a continuing representation that there are no intervening material changes in the risk from the date of the application to the time the policy is issued. The court noted that it was reasonable to infer the insurer would not have issued the policy had it been aware of the loss. In holding that even had there been acceptance of a premium for a period not covered by the policy it would not be enough to render the insurance valid, the court reiterated the principle that "[i]nsurance policies have traditionally called for good faith, openness and candor on the prospective insured's part, and to reduce this standard would seriously alter and disrupt the purpose of insurance." [5] 34 Ill. (2d) 314, 215 N. E. (2d) 803.

Applying these principles to the instant case, it is undisputed that 12:15 p. m., September 11, 1961, was the earliest time the compensation policy could have been binding.[6] At that moment Krug, the agent

---

[5] These principles have the approval and support of textwriters and commentators, viz.: Restatement, Restitution, § 8, *comment b*: "So, too, if one who has made a statement which was true at the time of speaking discovers that it is untrue with reference to present facts or if he discovers that a statement which was immaterial when made has become material, he is under a duty of disclosure"; 29 Am. Jur., Insurance, § 697; 9 Couch, Insurance (2 ed.) § 38:21.

[6] Olson v. American Central Life Ins. Co. 172 Minn. 511, 513, 216 N.

for Aetna, had no knowledge that the loss he was about to insure had already occurred. However, Riley, the insured, had been aware of it for at least an hour and a half. It is obvious that neither Krug nor Aetna would have written the policy if they had been apprised of the facts when Krug called his office and agreed to an oral binder. Any agent or insurer who at the time of assuming the risk knows that the loss has already occurred but undertakes coverage notwithstanding that fact would be subject not only to liability to stockholders or other policy-holders for violating the basic principles of insurance underwriting, but would as well be in serious difficulty with the public authorities who supervise and regulate the insurance industry. In short, it is absurd to assume that a company can legally bind itself to a loss which at the time of the initial undertaking it knows has already taken place.

In an age of easy access to telephones, as demonstrated by the calls which Riley made that morning, in my opinion it was not only entirely feasible but as a matter of law mandatory that Riley promptly communicate with Krug's office upon learning of Mr. Oster's illness. He had ample time to do so after the employee was taken to the hospital. His bad faith is underscored by the uncontradicted testimony of Krug's secretary that Riley again called the afternoon of the accident without at that time disclosing the loss. In the face of this unequivocal testimony, Riley's failure to deny the call is conclusive on that issue.[7]

While the majority opinion suggests that coverage must be afforded

---

W. 225, 226; Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 263, 8 N. W. (2d) 28, 35; 1 Cooley, Insurance (2 ed.) pp. 573, 575.

[7] "Q. * * * Now, the fact is that you called his office that very afternoon, isn't it, Mr. Riley?

"A. I may have.

"Q. On September 11, 1961.

"A. I may have but I don't remember.

"Q. And you talked to his office girl again, didn't you? Well, the fact is that you called that office back that afternoon to ask again if you had workmen's compensation insurance, didn't you?

"A. I don't recall it, I may have.

"Q. Do you deny—

"A. No, I don't deny it."

because the policy was issued with retroactive provisions after notice of the loss, our decision in Seavey v. Erickson, 244 Minn. 232, 69 N. W. (2d) 889, 52 A. L. R. (2d) 1144, clearly indicates that there is no waiver or ratification if the policy is intended to cover risks *beyond the loss which is the subject of litigation.* There we said (244 Minn. 246, 69 N. W. [2d] 898):

"* * * While the authorities are not in agreement, we believe that the rule to which we are committed is that acceptance and retention of a premium on a policy of insurance after knowledge of a loss is a waiver of a forfeiture, *at least unless the insurance can have some application to the property which remains after the loss.*" (Italics supplied.)

There was nothing inconsistent with issuing this workmen's compensation policy and denying liability for Mr. Oster's illness where obviously Riley was in the process of a project which would necessarily require other and additional employees to carry on the work. The policy was still in effect at the time of the trial. Therefore, cases which involve only a single risk and single loss, such as the total destruction of the insured property, are not in point.

To recapitulate, had Riley discharged his moral and legal responsibility by giving timely notice to Krug, clearly the policy would not have been written. His phone call the same afternoon in which he made no mention of the loss confirms an intention to withhold information which he believed would be fatal to the binder. In my opinion he should not now be permitted to profit by conduct calculated to mislead and to conceal the truth in a transaction which the law requires the parties to enter with the utmost good faith and candor.

I would therefore reverse.

KNUTSON, CHIEF JUSTICE (dissenting).

I agree with the dissent of Mr. Justice Otis.

ROGOSHESKE, JUSTICE (dissenting).

I agree with the dissent of Mr. Justice Otis.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.