# FARM BUREAU MUTUAL CASUALTY COMPANY
# v. VICTOR STEIN, SPECIAL ADMINISTRATOR OF
# ESTATE OF PETER L. SCHLOEDER.
# RONALD MATUS, INTERVENOR.

170 N. W. (2d) 334.

August 29, 1969—Nos. 41295, 41317.

*Sullivan & Schiefelbein* and *Loren Gross,* for appellant Matus.
*Willenbring & Lickteig,* for appellant Stein.

*Quinlivan, Quinlivan & Williams* and *O. C. Adamson II*, for respondent.

Heard before Knutson, C. J., and Murphy, Rogosheske, Sheran, and Peterson, JJ.

SHERAN, JUSTICE.

Appeals from an order of the district court denying a motion for amended findings of fact, conclusions of law, and order for judgment and also from the judgment of the district court.

Farm Bureau Mutual Casualty Company issued to Peter L. Schloeder an automobile liability insurance policy, number 433502, which covered the period of October 30, 1959, to April 30, 1960. The policy terminated effective April 30 because of non-payment of premium. Peter Schloeder mailed a check for the premium to Farm Bureau on May 27, 1960, postmarked 5 p. m. On May 31, 1960, at approximately 1:25 a. m., the automobile described in the policy numbered 433502 was involved in an accident near Cleveland, Wisconsin. Peter Schloeder was killed and intervenor, Ronald Matus, was injured. Since May 29 was Sunday, and the 30th was a holiday, the premium check was not stamped as received by Farm Bureau's employees until the morning of May 31 at approximately 8 a. m. The check was cashed in the normal course of business. On June 7, 1960, Farm Bureau was notified of the accident. On June 9, 1960, Farm Bureau returned the premium and declined to reinstate the policy.

A default judgment was entered in favor of intervenor against the estate of Peter Schloeder, and Farm Bureau then began this action asking for, and receiving, a declaratory judgment that there was no insurance coverage under this policy at the time this accident occurred. Intervenor and the special administrator of decedent's estate both appealed.

The Farm Bureau policy contains the following provision:

"If the insured, after failing to pay such premium in advance of its due date or within ten days after its due date, subsequently pays the same, such payment, if then accepted by the Company,

shall reinstate the policy, and insurance shall be *effective on the date and at the time the premium is received* for a term of six months. Such date of reinstatement will establish new renewal dates on a semi-annual basis. The reinstatement of such policy and insurance and the acceptance of such payment shall not render the company liable for any loss or damage occurring after the expiration of the six-month period at the end of which such payment was due and prior to the acceptance of such payment by the Company." (Italics supplied.)

It is well settled in Minnesota that—

"[c]ontracts of insurance, like other contracts, must be construed according to the terms the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense, so as to give effect to the intention of the parties as it appears from the entire contract." Bobich v. Oja, 258 Minn. 287, 294, 104 N. W. (2d) 19, 24.

1. The simple language of the policy is not ambiguous. We believe that any insured would understand the plain meaning of the above-quoted provision to be that if he sends in his premium after the 10-day grace period has expired, and if the premium is then accepted by the insurer, the insured would have insurance for 6 months from the *date* and *time* the premium was *received.* In addition, the provision clearly states that the insurer shall not be liable for any loss occurring after expiration of the previous policy and prior to the insurer's acceptance of the tendered premium. Since the premium was not received by the insurer until after the accident, there could be no policy in effect at the time of the accident.

The trial court found that the premium was received "not earlier than 8 a. m. on May 31, 1960." In Oster v. Riley, 276 Minn. 274, 150 N. W. (2d) 43, this court distinguished between the time a policy goes into *existence* and the time it becomes *effective,* holding that the existence is governed by the acts of the parties, and the effect is governed by the terms of the policy.

In that case, an application for workmen's compensation was made at 9:45 a. m.; an employee was injured at 10:30 a. m.; and the policy went into existence at 12:15 p. m.—all on September 11, 1961. By its terms the policy became effective at 12:01 a. m. on September 11. Therefore, the injury which occurred at 10:30 a. m. was covered by the policy.

Because of the harsh results which ensue when an accident involving uninsured vehicles results in personal injury we have very carefully considered the arguments advanced by appellants' counsel in support of coverage. It is true that when expressly or implicitly authorized by the offeror, an offer to contract may be accepted by mail. But in this case the offer to reinstate the lapsed policy was expressly dependent on (a) payment of the premium, and (b) acceptance of payment by the company. It is true that coverage "effective on the date" when a premium is accepted could reasonably be considered effective at the commencement of such day; but this policy ties the effectiveness of reinstatement to both the *date* and the *time* the premium is received. This can mean only that the 6 months' coverage was to begin on that day and at that hour and end a full 6 months later.

Finally, it is possible (perhaps probable) that the letter in which the premium check was enclosed was delivered to the insurer before the accident happened. In this sense, it was "received" before May 31. But to effect reinstatement, the policy requires that the premium be both "received" and "accepted." No coverage is afforded for events occurring "prior to the acceptance of such payment by the Company." We cannot see how a premium can be accepted by an insurer until it has exercised some dominion or control over it. According to the evidence, this did not happen until about 8 a. m. on May 31, 1960.

2. We do not agree with appellants' contention that Farm Bureau has waived forfeiture and is estopped to deny coverage because it retained the premium for 10 days and returned it only

after realizing that a loss had occurred. See, Eichten v. Klein, 280 Minn. 449, 160 N. W. (2d) 33, and Lievers v. National Ins. Underwriters, 257 Minn. 268, 101 N. W. (2d) 817. Appellants rely on Seavey v. Erickson, 244 Minn. 232, 69 N. W. (2d) 889, 52 A. L. R. (2d) 1144. However, in Lievers this court said (257 Minn. 268, 272, 101 N. W. [2d] 817, 820):

"* * * Seavey v. Erickson, *supra,* is not authority, however, for a holding to the effect that where an insurer accepts and retains a premium on a policy *without knowledge of a loss* such act constitutes a waiver."

Farm Bureau did not learn of the accident and Schloeder's death until June 7 and they returned the premium on June 9. We believe the premium was returned within a reasonable time after the insurer learned of the loss and the insurer has not waived the right to deny coverage. Mitchell v. Farmers Ins. Exch. (Mo.) 396 S. W. (2d) 647, may be distinguished. In that case the Missouri court held that the insurer was estopped to deny liability because it intentionally accepted the premium when it received it for the express purpose of reinstating the policy effective upon the date of the expiration of the prior policy. In the instant case, the receipt and acceptance of the premium payment would afford coverage as of the time and date the premium was received, but would not reinstate the policy effective upon the expiration date of the prior policy. Since the premium payment was not received by Farm Bureau prior to the accident, there was no coverage.

Affirmed.