CHARLES G. FRANKLIN AND OTHERS v.
JANET K. CARPENTER.
KEMPER SECURITY INSURANCE COMPANY AND
ANOTHER, THIRD-PARTY DEFENDANTS.

244 N. W. 2d 492.

July 23, 1976—Nos. 45648, 45719.

420

*Van Eps, Gilmore & Chantry, Duane E. Arndt,* and *Wayne D. Tritbough,* for appellant Kemper.

*Altman, Geraghty, Mulally & Weiss, Terence O'Loughlin, Frank Abramson,* and *Robert M. Mahoney,* for appellant St. Paul Fire and Marine.

*Rider, Bennett, Egan, Johnson & Arundel, Chester D. Johnson, Lee T. Peterson, Randy J. Abbott,* and *William J. George,* for respondent Carpenter.

*Cousineau, McGuire, Shaughnessy & Anderson* and *Stephen W. Shaughnessy,* for respondents Franklin.

Heard before Rogosheske, MacLaughlin, and Marsden, JJ., and considered and decided by the court en banc.

DAVID E. MARSDEN, JUSTICE.*

Kemper Security Insurance Company and St. Paul Fire & Marine Insurance Company separately appeal following a declaratory judgment finding that they each insured Janet K. Carpenter on May 27, 1972, when an automobile she owned and was operating crashed, causing the death of Charles G. Franklin's wife and the injury of his children, all passengers therein. We affirm.

The facts with respect to Fire & Marine are as follows: On Friday afternoon, May 26, 1972, Carpenter telephoned a Fire & Marine agent, requested coverage, and was issued a binder. However, she continued to shop for lower rates. On Friday evening, she met with an agent for the National Family Insurance Company and gave him a check for immediate coverage from his company. National concedes coverage and has provided a defense in the main action brought against Carpenter by Franklin. Carpenter did not intend to carry insurance with both Fire & Marine and National, but because of the Memorial Day weekend could not communicate her intention to Fire & Marine until Tuesday, May 30, 1972. She tried unsuccessfully to notify Fire & Marine by telephone on Friday evening or Saturday morning. The accident occurred on Saturday, May 27, 1972. At Carpenter's request, a friend telephoned Fire & Marine on Tuesday, May 30, 1972, and advised it to "forget the whole deal."

On appeal, Fire & Marine contends that its binder is unen-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

forceable for failure of consideration; that it was canceled by substitution of the National policy; and that it was rescinded.

■ Carpenter's promise to purchase a Fire & Marine policy at the quoted premium was adequate consideration for its issuance of the binder. A valid insurance contract was then formed. Ketterer v. Independent School District No. 1, 248 Minn. 212, 222, 79 N. W. 2d 428, 436 (1956). However, Fire & Marine argues that the contract is unenforceable for failure of consideration. The distinction is explained in 1 Corbin, Contracts, § 133; and 1 Williston, Contracts (3 ed.) § 119A, p. 490. When there is a lack of consideration, no valid contract is ever formed. When there is failure of consideration, a contract valid when formed becomes unenforceable because the performance bargained for has not been rendered. Fire & Marine's argument is that the consideration promised by Carpenter failed because, after receiving the binder, she did not subsequently purchase a policy. It appears that she was never billed a premium by Fire & Marine. In any event, nothing left undone by the insured or the insurer after an accident has occurred and third-party rights have intervened under the binder can operate to diminish those third-party rights.

■ Fire & Marine's second argument is that its policy was canceled by substitution of the National policy. The doctrine of cancelation by substitution is disfavored. Mutual Creamery Ins. Co. v. Iowa National Mutual Ins. Co. 294 F. Supp. 337, 340 (D. Minn. 1969), reversed on other grounds, 427 F. 2d 504 (8 Cir. 1970); Glens Falls Ins. Co. v. Founders' Ins. Co. 209 Cal. App. 2d 157, 25 Cal. Rptr. 753, 3 A. L. R. 3d 1058 (1962); Annotation, 3 A. L. R. 3d 1072. We have followed the better rule that cancelation is not effective until actually communicated. Hutchins v. United States Auto. Ins. Exchange, 170 Minn. 273, 277, 212 N. W. 451, 452 (1927). The intervening purchase of another policy does not effect an immediate cancelation of an earlier policy absent notice to that insurer. 6A Appleman, Insurance Law and Practice, § 4226, p. 659. Cf., Virginia Mutual Ins. Co. v. Insurance Co. of No. Amer. 383 F. 2d 6, 9 (4 Cir. 1967).

■ Finally, Fire & Marine argues that Carpenter rescinded the contract on May 30, 1972. But the accident had already occurred and Franklin's rights intervened prior to Carpenter's attempt to rescind. At this point, rescission was no longer possible. See, 17 Couch, Insurance 2d, § 67:230, which states:

"A distinction must be made between liability policies and other contracts of insurance with respect to the right of the parties thereto to mutually terminate such contracts. Where the contract of insurance provides for liability to third persons, the insurer and the insured cannot terminate such a contract by their voluntary action to the prejudice of a claimant's rights which have already vested."

In Pennsylvania Casualty Co. v. Upchurch, 139 F. 2d 892 (5 Cir. 1943), the court held on substantially identical facts that the insurer was liable for an accident occurring during the period after a binder was issued and before the insured gave notice that a replacement policy had been purchased from another company. The following language from the Upchurch opinion summarizes our views with respect to the issues raised by Fire & Marine:

"It is true that the rights of the [injured third parties] are derived from those of the insured, but they must be determined as of the time of the accident. Such rights cannot rise higher than their source, but they do rise as high as that source was when the collision took place. Nothing that the insured or insurer did [here rescission or cancelation by notice of substitution] or left undone [here failure to purchase a policy as promised when the binder was issued] since that time has diminished those rights." 139 F. 2d 893.

Accordingly, we affirm as to Fire & Marine.

■ Additional facts are necessary to determine the issues raised by Kemper. Carpenter had been insured by a Kemper policy which expired on May 26, 1972. Kemper mailed her routine renewal notices, but she began shopping for lower premiums with Fire & Marine and National, intending to let the Kemper

policy lapse. After the accident she received from Kemper a reinstatement offer. By the terms of this offer, if Carpenter mailed her reinstatement premium and Kemper received it by June 19, 1972, the policy would be reinstated retroactively to May 26, 1972.

Carpenter mailed a check to Kemper on June 3, 1972, but the envelope was returned by the post office with the notation: "Refussed [sic], Because of insufficient Address." Kemper concedes that the address on the envelope was proper and cannot explain why it was returned. On June 16, 1972, Carpenter mailed the same check back to Kemper in a different envelope, adding a post office box number to the address. Kemper received the check on June 20, 1972, one day after the acceptance date indicated in the reinstatement offer.

It is undisputed that Carpenter was invited to accept Kemper's reinstatement offer by mailing a premium payment. Kemper argues, however, that it had the freedom to condition its offer upon receipt of this premium by June 19, 1972. We agree. Farm Bureau Mutual Cas. v. Stein, 284 Minn. 407, 410, 170 N. W. 2d 334, 336 (1969); 6 Couch, Insurance 2d, § 31:110. But, it was enough that Carpenter deposited her check in the mail early enough to reach Kemper in due course on or before June 19, 1972. 14 Appleman, Insurance Law and Practice, § 7990, p. 250. Delivery was delayed by a presumed error on the part of the post office or a Kemper employee. Yet, having invited acceptance by mail, Kemper assumed the risk of such delay. Olsen v. Preferred Risk Mutual Ins. Co. 284 Minn. 498, 505, 170 N. W. 2d 581, 586 (1969).

■ Kemper also argues that this court should hold the policy void ab initio as a matter of public policy because Carpenter attempted to reinstate it retroactively without disclosing the occurrence of the accident. In Oster v. Riley, 276 Minn. 274, 278, 150 N. W. 2d 43, 47 (1967), we acknowledged that a policy would be void if at the time of application the applicant attempted to retroactively insure a known loss. As explained in the dissent-

ing opinion in the Oster case, the rationale for this rule is that disclosure of the accident is material to the risk assumed by the insurer. 276 Minn. 286, 150 N. W. 2d 52. The case at bar is distinguishable. Kemper's reinstatement offer provided, in effect, for a grace period on a policy already in existence, and the Kemper Division Controller conceded that knowledge of the accident was not material. When asked if reinstatement would have been retroactive upon timely receipt of the premium, this officer testified:

"* * * If we would have had no knowledge of other action on June 2nd or 3rd or whatever you want to stipulate that we received the check originally that was supposedly was refused, yes. If we had knowledge of the accident, the answer would still be yes because the policy holder did fulfill the terms and conditions of what we offered."

Thus, the fraud issue raised by Kemper is illusory. In any event, Kemper is precluded from raising fraud on appeal because the defense was neither pleaded nor litigated by consent below. Accordingly, we affirm as to Kemper.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.