FARM BUREAU INSURANCE COMPANY OF NEBRASKA, APPELLEE, v. LARRY WOZNY AND CLARK M. WASHBURN AND JUANITA WASHBURN, APPELLANTS.

294 N. W. 2d 363

Filed July 8, 1980. No. 42870.

H. Jerome Kinney, for appellants Washburn.

Thomas A. Otepka, for appellee.

No appearance for Wozny.

Heard before BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE and HASTINGS, JJ.

BRODKEY, J.

The defendants Clark M. and Juanita Washburn have appealed to this court from a judgment entered by the District Court for Douglas County, Nebraska, in an action brought by the plaintiff, Farm Bureau Insurance Company of Nebraska, to obtain a declaratory judgment against the defendants, Larry Wozny, Clark M. Washburn, and Juanita Washburn, requesting that the court declare that a policy of insurance issued by the plaintiff to Clark M. Washburn did not provide coverage to the Washburns at the time Juanita was involved in an accident which resulted in an action brought by defendant Larry Wozny to recover for damages sustained in the accident. We affirm.

On October 4, 1969, Farm Bureau issued to Clark an insurance policy captioned "Five Star 5 Year Guaranteed Renewable Self Rating Non-Assessable Family Automobile Policy." The policy contained the following provision with regard to payment of premiums:

> This policy shall remain in full force and effect for each renewal payment that the insured shall pay such cash premium as may be required by the company to renew the same, in advance of the expiration date of the policy, or within ten days after such expiration date. Should the insured fail to pay such cash premium as is required to renew the policy within the time so limited, the insurance shall no longer be in force and all cash premiums paid by the insured shall be considered as fully earned and the policy terminated. Failure of the insured to make

any required payment to the company, on or before the due date, shall automatically void this policy without notice of cancelation or notice of any other kind. If the insured after failing to pay such cash premium in advance, or within 10 days after the due date thereof, as is required by the company to renew the policy, subsequently pays the same, such payment *if then accepted by the company* shall reinstate the policy and insurance for the balance of the term of the renewal premium that payment is accepted, at the end of which period such premium shall be considered as fully earned, but the reinstatement of such policy and insurance and the acceptance of such payment shall not render the company liable for any loss or damage occurring after the expiration date of renewal term of the policy at the end of which such payment was due and prior to *the acceptance of such payment by the company.* If such payment is not made within thirty days after the expiration of the renewal term at the end of which such payment was due, *but is accepted by the company*, a new policy of insurance will be issued to the insured which will expire in accordance with the cash premium paid six months or 12 months from its effective date as hereinabove provided.

(Emphasis supplied.)

Clark made premium payments on a semiannual basis to the office of the Farm Bureau agent in Wahoo, Nebraska, which payments were made either prior to the expiration date of the renewal term of the policy or within the 30-day period following such due date, until April 4, 1977. The premium due on April 4, 1977, was not paid by Clark until May 9, 1977, which was after the expiration of the 30-day

renewal term.   Pursuant to the policy condition, Farm Bureau thereupon issued Clark a new policy of insurance with the effective date of May 9, 1977. Although Clark made the next semiannual premium payment, due on November 9, 1977, on November 16, 1977, he failed to make the next premium payment, due on May 9, 1978, until some time after the 30-day period had expired.   The date of acceptance of this premium payment is the principal question presented for our review.

At trial, evidence was adduced with regard to Farm Bureau's procedures dealing with the renewal and reinstatement of policies.   This procedure was that, approximately 20 days prior to the expiration date of any renewal term or of the original policy term, a premium-due notice is printed in Lincoln and sent to the insured.   The only addresses contained thereon are the address of the insured and the address of the Lincoln office of Farm Bureau. Should the premium payment not be received by Farm Bureau by the date specified, a second statement of premium due, also known as a "lapse notice," is sent to the insured.   The "lapse notice" informs the insured that he has a 10-day grace period in which to pay the renewal premium, which payment provides the insured retroactive coverage from the expiration date of the renewal period.   On the same date that the "lapse notice" is mailed to the insured, a statement of premium due, referred to as a "backdoor lapse notice," is mailed to the local agent by the Farm Bureau Lincoln office.   Such "backdoor lapse notice" is for the purpose of having the local agent remind the insured that he has not paid the premium due on the insurance policy and that the policy will lapse should the premium not be paid.   This reminder is generally given within a few days of the termination date of the renewal period, but prior to the end of the 10-day grace period. Upon receipt of the premium payment by the Farm

Bureau Lincoln office, a document entitled "county receipt" is mailed to the local agent so that he has a record of the premium payment for his files.

The evidence establishes that, while the local agents do have authority to bind Farm Bureau on insurance polices, subject to certain limitations and requirements, they have no authority to reinstate policies which have lapsed due to nonpayment following the expiration of the 10-day grace period. Decisions with regard to whether insurance should be reinstated, or a new policy issued, are made by the underwriting department of Farm Bureau in its Lincoln office. Insurance policies are not automatically reinstated if payment of the premium is made after the 10-day grace period has expired, but prior to 30 days following the expiration date of the renewal term; in fact, it appears that applications for reinstatement have been rejected by Farm Bureau in the past.

On June 21, 1978, Clark discovered that the insurance premium had not been paid. He thereafter obtained a cashier's check for the premium due and, as was his custom, mailed that check to the office of the Farm Bureau agent in Wahoo on June 22, 1978. The cashier's check was received in Wahoo the following day, which was Friday, June 23, 1978, recorded in the local agent's log, and mailed to the home office in Lincoln. Farm Bureau did not receive mail on Saturdays and, therefore, the cashier's check was not received by the Lincoln office until Monday, June 26, 1978. The premium payment was transmitted to the underwriting department of Farm Bureau, which department accepted the risk as of June 26, 1978, and issued a new insurance policy with an effective date of June 26, 1978.

It appears that Juanita was involved in an automobile accident with defendant Wozny on Sunday, June 25, 1978. Wozny then sued Juanita, following which Farm Bureau instituted this declaratory judgment

action for a determination of whether coverage existed at the time of the accident. The trial court, after hearing the foregoing evidence, found: (1) That no policy of insurance was in force on the date of the accident; (2) That the terms of the insurance policy were clear and unambiguous; and (3) That payment of the premium by Clark more than 30 days after the expiration date of the renewal term, even though accepted by Farm Bureau's local agent, did not provide insurance until a new policy was issued, which did not occur until June 26, 1978. The trial court rendered judgment for Farm Bureau and taxed the costs of the action to Clark and Juanita. Clark and Juanita have appealed that judgment to this court, assigning several errors to the proceedings below, which we now consider.

It is first contended that the trial court committed error by not advising Clark and Juanita, before trial commenced, of statutory grounds for the disqualification of the trial judge. During the trial, the trial judge advised the parties that he was insured by Farm Bureau. Neb. Rev. Stat. § 24-315 (Reissue 1979) provides, in pertinent part: "A judge or justice is disqualified from acting as such in the county, district or Supreme Court, *except by mutual consent of the parties*, in any case wherein he or she is a party or interested . . . ." (Emphasis supplied.) While it is true that the trial judge could have been more prompt in giving notice of his interest in the matter to the parties, it is likewise true that neither party objected to his hearing the matter, after being advised of such interest. We, therefore, conclude that the parties mutually consented to the trial judge's hearing this matter, and reject the first assignment of error.

Clark and Juanita next contend that the trial court committed error in finding that no insurance policy was in existence on the date of the accident. Specifically, they contend that receipt of the premium

payment at the office of the agent in Wahoo was "acceptance" by Farm Bureau under the contract terms and such "acceptance" resulted in a reinstatement of the policy as of June 23, 1978. We do not agree.

> [C]ontracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in plain, ordinary, and popular sense. Where the language is plain and unambiguous, the court will not read an ambiguity into the language in order to construe it against the one who prepared the contract. Cordes v. Prudential Ins. Co., 181 Neb. 794, 150 N.W.2d 905.

*Sampson v. State Farm Mut. Ins. Co.*, 205 Neb. 164, 167, 286 N.W.2d 746, 749 (1980).

The language used in the insurance policy issued to the Washburns is clear and unambiguous. The insurance policy provides that if a premium payment is made more than 30 days after the expiration date for the renewal term, and *is accepted by the company*, a new insurance policy will be issued to the insured. It is true that an insurance agent who receives and receipts for money for the renewal of an insurance policy by authority of the insurer is deemed to be an agent of the insurer. See, Neb. Rev. Stat. § 44-328 (Reissue 1978); *Zukaitis v. Aetna Cas. & Sur. Co.*, 195 Neb. 59, 236 N.W.2d 819 (1975); *Squires v. Implement Dealers Mut. Ins. Co.*, 188 Neb. 590, 198 N.W.2d 469 (1972).

However, it does not necessarily follow that the mere receipt of a premium payment, without more, amounts to "acceptance." The record reveals that the underwriting department of Farm Bureau customarily determines whether the company will accept or reject premium payments made after either

the 10-day grace period has expired or after the policy has automatically lapsed. Had Farm Bureau chosen not to accept the tendered premium payment and had, instead, returned the cashier's check to Clark, it is clear that coverage would not have existed at the time of the accident, as no policy of insurance would have been in existence at the time. We see no difference between that situation and the one presented for this court's review. While the local agent in Wahoo received the premium payment on June 23, 1978, and forwarded it to Farm Bureau that day, it is clear that the premium was not "accepted" by the company as payment until June 26, 1978. Of interest in this connection is the case of *Farm Bureau Mutual Cas. Co. v. Stein*, 284 Minn. 407, 170 N.W.2d 334 (1969), which involved a situation where, after the expiration of the previous policy and prior to reinstatement, the premium was sent in but not received by the insurer until approximately 6½ hours after the accident. The court held that there was no policy in effect at the time of the accident, stating:

Finally, it is possible (perhaps probable) that the letter in which the premium check was enclosed was delivered to the insurer before the accident happened. In this sense, it was "received" before May 31. But to effect reinstatement, the policy requires that the premium be both "received" and "accepted." No coverage is afforded for events occurring "prior to the acceptance of such payment by the Company." We cannot see how a premium can be accepted by an insurer until it has exercised some dominion or control over it. According to the evidence, this did not happen until about 8 a.m. on May 31, 1960.

*Id*. at 410, 170 N.W.2d at 337. We conclude that the trial court was correct in finding that no contract of

insurance was in existence as of the date of the accident, June 25, 1978.

It is further contended that, in any event, Farm Bureau was equitably estopped from asserting a policy defense because its actions amounted to a waiver of the pertinent policy provisions. We do not agree. The Washburns contend that they had been paying the premiums on their insurance for approximately 8 years directly to the local agent's office in Wahoo, Nebraska, and that they have been making the premium payments on the policy covering the automobile in question in this case to such office for a period of approximately 2 years. The record reveals that, since the commencement of the relationship of the Washburns and Farm Bureau, the Washburns had paid premiums on their various insurance policies after the due date on said policies on several different occasions, all of which payments, with the exception of three, were made within the 10-day grace period. Of the three exceptions noted above, one is the subject of this appeal; in another, the payment was made after the 10-day grace period but before the 30-day period; and, in one case only, was payment made after the expiration of the 30-day period when the policy had lapsed. In all cases except the one referred to, the company followed its policy provisions and obligations. By these actions, the Washburns contend that a course of dealing or custom arose which estops Farm Bureau from asserting the policy defense of nonpayment of premiums. The general rule is stated in 43 Am. Jur. 2d *Insurance* § 1140 (1969) as follows:

> To warrant a recovery on the basis of a course of dealing or custom, where a premium is not paid when due, it is necessary to prove that the course of dealing between the insured and the insurer in reference to the acceptance of overdue payments amounted to a custom or habit; that by rea-

son of this course of dealing, the insured was justified in believing that the insurer would not insist on a forfeiture for failing to pay subsequent premiums; that the insured believed he could postpone the payment of premiums without risking a forfeiture; and that he acted on this belief, and therefore did not pay the premium at its maturity.

Unrelated acts or forgiveness of the occasional delinquencies of a policyholder do not ordinarily constitute a course of dealing.

See, also, 6 Couch on Insurance 2d, § 32:369 (1961); *McFarland v. Mutual Auto. Ins. Co.*, 201 Md. 241, 93 A.2d 551 (1953); *State Farm Mutual Automobile Ins. Co. v. Robison*, 11 Ariz. App. 41, 461 P.2d 520 (1969); *Safeco Insurance Company of America v. Oehmig*, 305 So. 2d 52 (Fla. App. 1975).

This issue was considered in *Aetna Life Ins. Co. v. Kepler*, 116 F.2d 1 (8th Cir. 1941). In that case, an insurer's acceptance of three overdue annual premiums on a disability insurance policy in the course of 12 years was held not to constitute a course of dealing, custom, habit, or practice which would "estop" the insurer from claiming default in payment of a subsequent premium. In so holding, the court stated:

The applicable substantive law is that of Nebraska. It is a rule of law of that State that if an insurer has, by a course of dealing, induced an insured reasonably to believe that prompt payment of premium in accordance with the terms of a policy will not be required, and the insured acts upon that belief, the insurer will be estopped to claim a lapse of the policy for a failure of the insured strictly to comply with the provisions of the policy relative to prompt payment of premiums. But occasional indulgences

shown by an insurer to a policyholder with respect to prompt payment of premium do not, under the law of Nebraska, create an estoppel and do not have the effect of varying the terms of the policy with respect to the time when future premiums must be paid. How many indulgences shown by an insurer to an insured with respect to the payment of premiums after they are due will constitute a course of dealing upon which an insured may reasonably rely or will justify a finding of the existence of such a course of dealing, is uncertain, but we think that language used by the Supreme Court of Nebraska in the case of Van Dahl v. Sovereign Camp, W.O.W., 130 Neb. 181, 264 N.W. 454, 458, 459, decided in 1936, indicates that the acceptance by an insurer of three overdue annual premiums in the course of twelve years, under the circumstances disclosed by the evidence in the instant case, would not constitute a course of dealing, a custom, a habit, or a practice which would estop an insurer from claiming a default in the payment of premium.

The acceptance in the past by an insurer of overdue premiums from an insured will not constitute a course of dealing upon which the insured may rely in failing to pay a premium when due, unless the previous acceptance of overdue premiums had become a custom, a habit or a practice. Unrelated acts of forgiveness of the occasional delinquencies of a policyholder do not ordinarily constitute a course of dealing. 29 Am. Jur., § 860, pages 657-659, and cases cited. Compare, Van Dahl v. Sovereign Camp, W.O.W., supra.

*Id.* at 5-6.

It should be further noted in this case that the policy in question contains a specific provision with reference to waiver and estoppel. That provision reads as follows:

> Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by a duly authorized representative of the company.

Under the above provision it is clear that there can be no waiver or estoppel of the company to claim the right of prompt payment of premium, or to issue a new policy in the event of the later acceptance of past due premiums. It is clear that there was no endorsement made to the policy in question which would permit that course of action.

The sole evidence upon which a claim of waiver may possibly be based was Clark's testimony that he dealt solely with the local agent's office in Wahoo. However, with the one exception, the evidence is undisputed that Farm Bureau always followed the policy provisions. According to the record, the local agent had no authority to reinstate policies after lapse for nonpayment of premiums. Any premium payments which were received by the local agent's office in Wahoo were transmitted to the home office in Lincoln. Upon receipt by the home office, the underwriting department of the company made all decisions with regard to the acceptance or rejection of the premium payment and the reinstatement of policies which had lapsed. In fact, the record reveals that 1 year prior to the expiration and lapse of the policy in question, *a new policy* was issued to the Washburns for the same reason, to wit, nonpayment

of premiums within the periods allowed by the policy. We, therefore, conclude that no waiver of the policy provisions occurred and no policy of insurance was in effect on the date the accident occurred, Sunday, June 25, 1978.

We affirm the judgment of the District Court.

AFFIRMED.

KRIVOSHA, C.J., participating on briefs.